**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| KUNAL KAPAI, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:19-CV-00749-RWS- |
| v. | § | CAN |
| | § | |
| UNIFIED BUSINESS TECHNOLOGIES, | § | |
| INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants' Motion to Dismiss and Compel Arbitration [Dkt. 14]. Therein, Defendants seek dismissal of Plaintiff's suit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3), and in accordance with the Federal Arbitration Act, as well as an order compelling this case to arbitration [Dkt. 14]. After reviewing Defendants' Motion to Dismiss and Compel Arbitration, Plaintiff's Response [Dkt. 17], Defendants' Reply [Dkt. 18], and all other relevant findings, the Court recommends that Defendants' Motion to Dismiss and Compel Arbitration be **GRANTED**, as set forth herein.

**BACKGROUND**

Plaintiff Kunal Kapai ("Plaintiff") initiated this suit on October 11, 2019 [Dkt. 1]. Plaintiff alleges he was hired to serve as Defendant Unified Business Technologies, Inc.'s ("Defendant UBT") Senior Vice President of Operations in January 2013 by Defendant UBT's CEO, Michelle D'Souza ("Defendant D'Souza") [Dkt. 1 at 1]. Plaintiff states he was chiefly responsible for managing and operating Defendant UBT's telecommunications division but was, in addition to these duties, "compelled to work without pay" for Addon Services, LLC ("Defendant Addon") [Dkt. 1 at 1]. Plaintiff continues that, after ending an intimate relationship with Defendant

D'Souza, who acted as Plaintiff's immediate supervisor, Defendant D'Souza retaliated against Plaintiff and ultimately terminated his employment on May 10, 2016 [Dkt. 1 at 1-2]. Plaintiff also asserts claims against other individuals either employed with or contracted with Defendant UBT, including Candace Plank, Ali Shaheen, Marylou Boscardin, Devika Pakkala, and Georgia Johnson ("Individual Defendants") (UBT, D'Souza, Addon, and Individual Defendants, collectively "Defendants") [Dkt. 1 at 2-3]. Plaintiff's claims against Defendants include sex (gender-male) discrimination under Title VII, retaliation under Title VII, defamation, tortious interference with contract, conspiracy, quantum meriut, and breach of contract [Dkt. 1 at 9-17].

Plaintiff alleges that he timely completed all administrative prerequisites to filing the instant suit, including filing a charge of discrimination and receipt of his Right-to-Sue Notice from the Equal Employment Opportunity Commission ("EEOC") [Dkt. 1 at 4].

On January 17, 2020, Defendants filed the instant Motion to Dismiss and Compel Arbitration [Dkt. 14]. On February 3, 2020, Plaintiff filed a Response in opposition [Dkt. 17]. On February 10, 2020, Defendants filed a Reply [Dkt. 18]. Relevant to the instant Motion, Plaintiff's employment with UBT was governed by a written employment agreement (the "Employment Agreement"). Section 16 of the Employment Agreement states as follows:

SECTION 16. ARBITRATION

Any dispute, claim or controversy arising under this Agreement or in connection with your employment with the Company shall be submitted to binding arbitration before the American Arbitration Association in Southfield, Michigan and that a judgment of the Oakland County Circuit Court may be entered upon any award issued by the American Arbitration Association. You agree that you will be responsible for all costs associated with such arbitration, including reasonable attorney fees, if the Company prevails on its claims or defenses in any respect.

(hereinafter, referred to as the "Arbitration Agreement") [Dkt. 1 at 27]. The Employment Agreement further recites that it is "governed by and is to be construed in accordance with"

Michigan Law, and expressly sets forth that a Michigan court shall enter judgment upon conclusion of any arbitration [Dkt. 1 at 26].

## LEGAL STANDARD

Defendants move to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) as the Fifth Circuit has not definitively decided which provision is the proper rule for a motion to dismiss based on an arbitration clause [Dkt. 14 at 1 n.1].  *Baptist Hosps. of Se. Tex. v. SelectCare of Tex., Inc.*, No. 1:17-CV-456, 2018 WL 5569424, at \*3 (E.D. Tex. Oct. 4, 2018) (citing *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010)), *report and recommendation adopted*, No. 1:17-CV-456, 2018 WL 5532483 (E.D. Tex. Oct. 26, 2018).

### *Federal Rule of Civil Procedure 12(b)(1)*

A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject-matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  The Court generally will accept all "well-pleaded allegations in the complaint as true" and "construe those allegations in a light most favorable to Plaintiff."  *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).  The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  And "the court may consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue."  *Ramirez v. Lone Star Pediatrics, P.A.*, No. 3:13-CV-2035-L, 2014 WL 1281510, at \*2 (N.D. Tex. Mar. 31, 2014) (citing *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986)); *see also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)  (noting that, when a motion and evidence brings the court's jurisdiction into question, "no presumptive truthfulness attaches to plaintiff's allegations").

***Federal Rule of Civil Procedure 12(b)(3)***

Federal Rule of Civil Procedure 12(b)(3) allows a party to move for dismissal based on improper venue. FED. R. CIV. P. 12(b)(3). When an objection to venue is raised, the burden is on the plaintiff to establish that the district he or she chose is a proper venue. *Knapper v. Safety Kleen Systems, Inc.*, No. 9:08-CV-84-TH, 2009 WL 909479, at *3 (E.D. Tex. Apr. 3, 2009).

***Federal Arbitration Act***

Congress enacted the Federal Arbitration Act ("FAA") "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009). The FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. By enacting the FAA, Congress clearly intended "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983), and to effectuate this purpose, it specifically authorized enforcement of arbitration agreements through court orders staying litigation and requiring that parties engage in the arbitration process. 9 U.S.C. §§ 3, 4.

Against this backdrop, the Court notes that "arbitration [remains] a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs. v. Comms. Workers of Am.*, 475 U.S. 643, 648 (1986). Arbitration "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Bridas*

*S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003). Therefore, under the FAA (unless the parties have agreed to submit the arbitrability question itself to arbitration), the court must perform a two-step inquiry to determine whether to compel a party to arbitrate. First, the court must decide whether the parties agreed to arbitrate the dispute. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). With respect to this first inquiry, there are two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.*; *see also Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009). Courts determine the *validity* of arbitration agreements under applicable *state* law. *Cooks v. Soto*, No. 3:15-CV-1929-B, 2015 WL 9583806, at *1 (N.D. Tex. Dec. 30, 2015) (citing *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008)). Second, if the Court concludes the parties agreed to arbitrate the dispute, the court next considers whether "any federal statute or policy renders the claims nonarbitrable." *Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 381 (5th Cir. 2008). And "[w]hile there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate . . . . Nonetheless, once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

In addition, once a court finds that arbitration is required, it must stay the underlying litigation to allow arbitration to proceed. 9 U.S.C. § 3. The Court, however, has the discretion to dismiss cases with prejudice when all the issues raised must be submitted to arbitration, but there is no obligation to do so. *White v. SoftLayer Techs., Inc.*, No. 3:15-CV-527-M, 2015 WL 5052365, at *6 (N.D. Tex. Aug. 27, 2015) (citing *Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Servs.,*

*Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013)).  If the only *possible* role of the court once arbitration is complete is to review the arbitration award, then the case should be dismissed with prejudice. *Id.*

## ANALYSIS

### Motion to Compel Arbitration

The Motion to Compel Arbitration presents two issues for consideration: (1) whether the Court must compel Plaintiff's claims against UBT to arbitration, and (2) whether Plaintiff's claims against the named-Defendants, other than UBT, should  also be compelled to arbitration under the principles of equitable estoppel [Dkt. 14 at 3].  As discussed *supra*, "[w]hen considering a motion to compel arbitration, the Court must address two questions . . . . 'First, whether there is a valid agreement to arbitrate, and second, whether the dispute in question falls within the scope of the arbitration agreement.'"  *Jallo v. Resurgent Cap. Servs. LP*, 131 F. Supp. 3d 609, 612-13 (E.D. Tex. 2015) (quoting *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009)).  Plaintiff does not challenge the scope of the Arbitration Agreement in his Response, seemingly conceding that if the Court determines a valid agreement to arbitrate exists, the present dispute between Plaintiff and *all* Defendants falls within the scope of the Arbitration Agreement in the Employment Agreement [*See* Dkts. 17; 18].[1]  The Court, therefore, focuses on whether there is a valid agreement to arbitrate between the Parties.

---

[1] This suit involves Plaintiff's former employer, his employer's Owner/CEO, and five former coworkers at the company.  As Defendants note, Plaintiff's claims against the individual defendants "are all predicated upon the termination of the Employment Agreement and allege substantially interdependent and concert misconduct with UBT," and "Plaintiff's claim against Addon Services is based in part upon his Employment Agreement with UBT and is closely intertwined with his Title VII claims against UBT" [Dkt. 14 at 8-10].  The Arbitration Agreement in Plaintiff's Employment Agreement with UBT is a broad clause, and appears to embrace all disputes between the Parties having a significant relationship to the contract.  "Under federal common law, the Fifth Circuit has held that a non-signatory can compel arbitration under equitable estoppel principles if 1) the signatory to a written agreement containing an arbitration clause relies on the terms of the written agreement to assert claims against the non-signatory, and 2) these allegations raise substantially interdependent and concerted misconduct by both the non-signatory and

Plaintiff argues a valid agreement to arbitrate does not exist and that the Arbitration Agreement contained in the Employment Agreement is unconscionable because of the fee-shifting language contained therein [Dkt. 17].  Again, the Arbitration Agreement in Plaintiff's Employment Agreement states:

> Any dispute, claim or controversy arising under this Agreement or in connection with your employment with the Company shall be submitted to binding arbitration before the American Arbitration Association in Southfield, Michigan and that a judgment of the Oakland County Circuit Court may be entered upon any award issued by the American Arbitration Association.  *You agree that you will be responsible for all costs associated with such arbitration, including reasonable attorney fees, if the Company prevails on its claims or defenses in any respect*.

[Dkt. 1 at 27] (emphasis added).  Plaintiff claims this language invalidates and/or otherwise renders the arbitration clause unenforceable as it imposes substantial costs on him—potentially thousands of dollars and/or more than 10 to 20 times the cost for Plaintiff to litigate in federal court.

State-law principles govern the determination of whether the terms of an arbitration agreement are valid.  *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995);  *Cooks*, 2015 WL 9583806, at *1 (citing *Morrison*, 517 F.3d at 254).  As to issues decided by application of state law, a federal court must follow the choice of law rules of the forum state.  *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  The Court, therefore, must apply Texas choice of law rules.  Under Texas law, if a contract includes an enforceable choice of law clause, the law of the chosen state—Michigan in this case—must be applied.  *See Resolution Tr. Corp.*, 958 F.2d at

---

the signatories to the contract . . . .  Further, 'when each of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement.'"  *Psara Energy, Ltd. v. Space Shipping, Ltd.*, No. 1:18-CV-00178-MAC, No. 1:18-CV-00178-MAC, 2019 WL 1915619, at *6 (E.D. Tex. Jan. 4, 2019), *appeal dismissed sub nom. Psara Energy, Ltd. v. Advantage Arrow Shipping, L.L.C.*, 946 F.3d 803 (5th Cir. 2020).  Although Plaintiff has conceded the applicability of the Arbitration Agreement to the non-signatories, the Court notes that Plaintiff's allegations and claims raise substantially interdependent and concerted misconduct by both the non-signatories and the signatories to Plaintiff's Employment Agreement and Arbitration Agreement, as well as arise out of and/or relate directly to Plaintiff's Employment Agreement / Arbitration Agreement.

1318.  Under Michigan law, a party can invalidate a contract provision only by establishing *both* procedural and substantive unconscionability.

More specifically, "[u]nder Michigan law, unconscionability is a question of law left to the courts . . . [and] is determined by analyzing the facts and circumstances present when a contract was made . . . ."  *Whirlpool Corp. v. Grigoleit Co.*, 713 F.3d 316, 320 (6th Cir. 2013) (citing *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 323 (6th Cir. 1998)).  Section 440.2302 of the Michigan Compiled Laws states:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

MICH. COMP. LAWS § 440.2302(1); *see also Whirlpool Corp.*, 713 F.3d at 321.  "[F]ederal courts consistently observe that Michigan law requires a party to demonstrate *both* procedural and substantive unconscionability."  *LNV Corp. v. Savannah Dev., LLC*, No. 12-13562, 2014 WL 4978668, at *6 (E.D. Mich. Oct. 6, 2014) (citing *Whirlpool*, 713 F.3d at 321) (emphasis added). In other words, "[a] court interpreting Michigan law must answer two questions when determining whether contracts are unconscionable: '(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; and (2) Is the challenged term substantively reasonable?'"  *Whirlpool Corp.*, 713 F.3d at 321 (quoting *Allen v. Mich. Bell Tel.*, 18 Mich.App. 632, 636 (Mich.Ct.App.1969)).  The first inquiry is "procedural unconscionability," and the second inquiry is "substantive unconscionability."  *Whirlpool Corp.*, 713 F.3d at 321.  Proof of one without the other is insufficient to invalidate a contract.  *See id.* at 322-23 (declining to consider substantive

unconscionability because there was no procedural unconscionability, and both procedural and substantive unconscionability are needed to render the agreement unenforceable).

"Procedural unconscionability exists where 'the weaker party had no realistic alternative to acceptance of the term.  If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability.'"  *LNV Corp.*, 2014 WL 4978668, at *6 (quoting *Clark v. DaimlerChrysler Corp.*, 268 Mich.App. 138 (Mich.Ct.App.2005)).

"A contract is substantively unconscionable if its provisions are so outrageously unfair as to shock the judicial conscious."  *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 628 (E.D. Mich. 2019) (citing *Rivera v. Ford Motor Co.*, 2017 WL 3485815, at *3 (E.D. Mich. Aug. 15, 2017)), *reconsideration denied*, No. 18-MD-02818, 2019 WL 5696697 (E.D. Mich. Nov. 4, 2019);  *see also Powers v. Charles River Labs., Inc.*, No. 16-13668, 2017 WL 9471678, at *6 (E.D. Mich. Aug. 8, 2017), *report and recommendation adopted*, No. 16-CV-13668, 2017 WL 4324942 (E.D. Mich. Sept. 29, 2017).

To reiterate, Plaintiff argues the Arbitration Agreement is unconscionable because, under its terms, "Plaintiff will be liable for all of these Company expenses and the Company's attorney's fees incurred in arbitration" [Dkt. 17 at 3].  Plaintiff cites two Texas federal district court cases for the proposition that an agreement requiring a plaintiff to pay all the defendant's arbitration costs in the event that the plaintiff is unsuccessful at arbitration is unconscionable as a matter of law. *See Lott v. Buccaneer Satellite*, No. 9:11-cv-00173-MHS (E.D. Tex. Aug. 10, 2012), ECF No. 21; *Coronado v. D.N.W. Houston, Inc.*, No. H-13-2179, 2015 WL 5781375 (S.D. Tex. Sept. 30, 2015). However, these cases apply Texas law—not Michigan law.  *See id.*  Further, the cases do not

REPORT AND RECOMMENDATION – Page 9

address and/or determine that the movant demonstrated *both* procedural and substantive unconscionability as is required under Michigan Law. *See id.*

Plaintiff further relies on *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000). Therein, the Supreme Court concluded:

> It may well be that the existence of large *arbitration costs* could preclude a litigant such as [the movant] from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not *show* that [the movant] will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter . . . . The 'risk' that [the movant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.

*Green Tree*, 531 U.S. at 90-91 (emphasis added). The Supreme Court's decision in *Green Tree* provides no basis for Plaintiff to oppose arbitration. Here, too, Plaintiff's concern is about the mere *threat* of fee-shifting. Plaintiff cites as support for his perceived "threat" of excessive costs an American Arbitration Association fee schedule that lists a "[n]on-refundable filing fee capped at $300, unless the clause provides the individual pays fees" [Dkt. 17-1]. This alone is "hardly any information on the matter." *See Green Tree*, 531 U.S. at 91. "[W]hen a party fails to specify excessive arbitration costs and instead speculates that a 'risk' exists that the party will be saddled with prohibitive costs of the arbitration proceeding, a court is not required to invalidate the arbitration agreement." *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 712 (5th Cir. 2002) (citing *Green Tree*, 531 U.S. at 90-91); *see also Zawada v. Uber Techs., Inc.*, No. 16-CV-11334, 2016 WL 7439198, at *7 (E.D. Mich. Dec. 27, 2016) ("To speculate that this arrangement would result in prohibitive costs for the Plaintiffs is not enough to make the provision substantively unconscionable."), *aff'd*, 727 F. App'x 839 (6th Cir. 2018).[2] Plaintiff has failed to meet such burden.

---

[2] *See also Xome Holdings LLC v. Derbonne*, No. 4:16-CV-00550-ALM, 2017 WL 2402578, at *3 (E.D. Tex. June 2, 2017) ("[The movants] have not met their burden of establishing arbitration carries 'significantly greater costs' than litigation, and the Court may not speculate as to whether [the movants] may incur any arbitration cost at all.").

Even were the Court to assume the Arbitration Agreement contained in Plaintiff's Employment Agreement was substantively unconscionable, Plaintiff has not even argued the Employment Agreement is procedurally unconscionable.  Plaintiff has not demonstrated that he "had no realistic alternative to acceptance of the term." *See LNV Corp.*, 2014 WL 4978668, at *6.

At its core, this lawsuit involves an employment contract between a skilled individual hired to work as Senior Vice President of Operations for a Michigan-based company.  Importantly, as Defendants point out, Plaintiff asserts in his Complaint that "[w]hen Plaintiff was hired at UBT, Plaintiff's professional reputation commanded the respect of UBT employees, vendors, competitors, and United States government officials who awarded contracts to UBT" [Dkt. 1 at 5]. Plaintiff's Complaint pleads a unique professional reputation and significant experience in his chosen field.  *See LNV Corp.*, 2014 WL 4978668, at *6.  Indeed, given Plaintiff's background, Plaintiff accepted a high-level position as Senior Vice President, indicating he was "free to accept or reject the term." *See id.*  Even assuming, *arguendo*, that Plaintiff was on the weaker side of the bargaining table—which alone is insufficient to render a contract procedurally unconscionable— Plaintiff almost certainly had *other* professional options given his self-proclaimed reputation and experience. *See generally Noye v. Johnson & Johnson*, 1:15-CV-2382, 2017 WL 5135191, at *8 (M.D. Pa. Nov. 6, 2017) (applying both Michigan and Pennsylvania law, highlighting the movant's past experience and education, and determining that the movant "has not demonstrated that he lacked alternatives").  Plaintiff has failed to demonstrate the Arbitration Agreement is procedurally unconscionable. *See LNV Corp.*, 2014 WL 4978668, at *6.

Because Michigan law requires a party to demonstrate *both* procedural and substantive unconscionability, Plaintiff's failure to demonstrate either procedural or substantive unconscionability alone is fatal to his challenge to the Arbitration Agreement as unconscionable.

*See Powers*, 2017 WL 9471678, at *6 ("In the event of a failure to establish substantive unconscionability, the court need not even address procedural unconscionability."); *Oberhansly v. Ass'n of Better Living & Educ. Int'l*, No. 1:15-CV-73, 2017 WL 2115539, at *7 (W.D. Mich. May 16, 2017) ("There was no procedural unconscionability; so the contract is valid and enforceable."); *LNV Corp.*, 2014 WL 4978668, at *6.  As such, Plaintiff has failed to establish that the Arbitration Agreement in the Employment Agreement is unconscionable under Michigan law.  *See LNV Corp.*, 2014 WL 4978668, at *6.  The Court finds that there is indeed a valid and binding agreement to arbitrate between the Parties.  *See generally Satarino v. A.G. Edwards & Sons, Inc.*, 941 F. Supp. 609, 611 (N.D. Tex. 1996) (enforcing a broad arbitration policy relating to employment disputes).

Thus, in light of the "strong federal policy favoring arbitration," Plaintiff's claims should be compelled to arbitration.  *See generally Banc One Acceptance Corp.*, 367 F.3d at 429.

***Whether to Dismiss with Prejudice or Stay Litigation***

When claims are referred to arbitration, upon application of one of the parties, the Court must stay the trial of the action until the arbitration is complete.  9 U.S.C. § 3.  But a court may also, in its discretion, dismiss the case "when all of the issues raised in the district court must be submitted to arbitration."  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also White*, 2015 WL 5052365, at *6 (citing *Adam Techs.*, 729 F.3d at 447 n.1).

Here, Plaintiff does not contest that all claims in his suit fall under the terms of the Arbitration Agreement.  Rather, Plaintiff solely argues that the Arbitration Agreement itself is unconscionable.  As established *supra*, the Court determined that the Arbitration Agreement is not unconscionable under Michigan law.  Because the only *possible* role of the Court once arbitration is complete is to review the arbitration award—an unlikely role because "a judgment of the Oakland County Circuit Court may be entered upon any award issued  by the American Arbitration

Association" under the terms of the Employment Agreement—the case should be dismissed with prejudice. *See White*, 2015 WL 5052365, at *6; *McSweeney v. Fargo*, No. 4:15CV494, 2016 WL 525855, at *4 (E.D. Tex. Feb. 10, 2016), *report and recommendation adopted sub nom. McSweeney v. Wells Fargo, N.A.*, No. 4:15-CV-494, 2016 WL 899911 (E.D. Tex. Mar. 9, 2016); *Ritchie v. Cole Services, Inc.*, No. 4:15-CV-432, 2015 WL 6438763, at *3 (E.D. Tex. Oct. 22, 2015), *report and recommendation adopted*, 4:15-CV-432, 2015 WL 7455538 (E.D. Tex. Nov. 23, 2015).

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends that Defendants' Motion to Dismiss and Compel Arbitration [Dkt. 14] be **GRANTED** as set forth herein.  Plaintiff's claims should be dismissed with prejudice as they are subject to the Arbitration Agreement contained in Plaintiff's Employment Agreement with Defendant UBT; to the extent Plaintiff desires to pursue his claims against Defendants, he must pursue his claims in accordance with such agreement.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that

such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 8th day of May, 2020.**

_____

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION – Page 14